IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANTJUAN L. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-1064-D |
| | ) | |
| CITY OF OKLAHOMA CITY, *et al.,* | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court are motions for summary judgment filed by Defendant City of

Oklahoma City [Doc. No. 56], Defendants Bill Vetter, Ryan Sorrels, Russell Mock, and

Jacob McClain [Doc. No. 59]; and Plaintiff Antjuan Martin [Doc. No. 61], pursuant to Fed.

R. Civ. P. 56.[1] Defendants seek a judgment as a matter of law in this action under 42 U.S.C.

§ 1983 regarding Plaintiff's allegedly unlawful arrest.[2] Plaintiff seeks a declaratory judgment

that an ordinance he was charged with violating, Section 30-68(a) of the Oklahoma City

Municipal Code, is unconstitutional. The motions are fully briefed and at issue.

## **Factual Background**

Plaintiff claims his constitutional rights were violated when he was arrested for

obstructing Oklahoma City police officers who were attempting to arrest an intoxicated man

---

[1] Plaintiff does not cite Rule 56, but no other procedural rule would permit a pretrial adjudication of his claim based on a "Statement of Uncontroverted Material Facts." *See* Pl.'s Mot. Declaratory J. [Doc. No. 61], pp.2-3.

[2] The Court previously dismissed Plaintiff's action against Defendant William Citty, and he is not included in references to "Defendants" in this Order. *See* Order of January 23, 2014 [Doc. No. 25].

outside of a nightclub where Plaintiff was working as a private security guard. Plaintiff brings § 1983 claims against the individual police officers involved in the incident and the City of Oklahoma City ("City"). Specifically, Plaintiff claims Defendants Ryan Sorrels, Russell Mock, Jacob McClain, and Bill Vetter arrested and imprisoned him without probable cause and by a use of excessive force in violation of the Fourth and Fourteenth Amendments, arrested him in retaliation for protected speech in violation of the First Amendment, and conspired to violate his right to due process after he lodged a formal citizen's complaint against them "by rewriting their official reports in order to manufacture probable cause for his arrest, imprisonment, and prosecution." *See* Compl. [Doc. No. 1], ¶ 48. He also claims the defendants who testified in his criminal trial caused his retaliatory prosecution in violation of the Fourth and Fourteenth Amendments by giving false testimony "to increase the likelihood of a conviction." *Id*. ¶ 45.

Plaintiff alleges the City is liable for these violations of his constitutional rights because it adopted "invalid and unconstitutional policies, specifically Ordinances 30-58 and 30-68." *Id*. ¶ 35. Plaintiff also asserts a declaratory judgment claim that "Ordinance 30-68 is unconstitutionally broad and vague on its face, and as applied to Plaintiff, because it criminalizes a substantial amount of constitutionally protected speech" and "accords police officers unconstitutional and unfettered discretion in their enforcement" and because "persons of ordinary intelligence cannot reasonably understand what types of conduct [are] prohibited." *Id*. ¶¶ 50-52. Plaintiff also seeks a declaration that "Ordinances 30-58 and 30-

68 conflict with the Obstruction Statute," Okla. Stat. tit. 21, § 540, and are "invalid by preemption." *Id*. ¶ 55 & Prayer, ¶ H.

## The Parties' Motions

Defendants seek summary judgment on all claims. The individual defendants (collectively, the "Officers") contend, for reasons discussed *infra*, that they are entitled to qualified immunity on Plaintiff's claims of false arrest or imprisonment, retaliatory arrest, retaliatory prosecution, and conspiracy, and that his excessive force claim lacks merit. The City contends Section 30-68 of the Oklahoma City Municipal Code is constitutional, Sections 30-58 and 30-68 are not preempted by state law, and no municipal policy caused any constitutional violation that occurred. Plaintiff opposes Defendants' motions and, by his motion, contends he is entitled to a declaratory judgment that Section 30-68 is unconstitutionally overbroad and vague on its face, and is unconstitutional as applied to him because the only possible basis for his arrest under the statute was his speech and the Officers were permitted to determine that his speech justified an arrest.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party.

3

*Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If a movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Undisputed Facts**[3]

In the early morning hours of October 8, 2011, Sergeants Sorrels, Mock and McClain and Lieutenant Vetter were working as part of an undercover unit of Oklahoma City police officers investigating car burglaries in the area of Memorial Road between Pennsylvania Avenue and Portland Avenue. Sgt. Sorrels' truck was parked in the parking lot of the Casablanca nightclub, and other members of the unit, including both defendant and non-defendant officers, were nearby. Plaintiff was working as a security guard at the Casablanca club for his own security company; he had contracted with other security guards to assist him, including Renaldo Lemons, Chris Ross, Lejon Hines, and Tanner Jacobs. All security guards other than Plaintiff wore shirts that identified them as security personnel.

Two couples who were attending a party at the Casablanca club (including Plaintiff's sister) left the club near closing time. One man in the group, Darren McDaniel, had been drinking alcohol, was talking very loudly, and appeared to be intoxicated. Mr. McDaniel approached Sgt. Sorrels and asked him to take a picture of the group. Sgt. Sorrels refused; Mr. McDaniel became angry and belligerent; and Sgt. Sorrels decided to arrest him for disorderly conduct and public intoxication. Mr. McDaniel did not submit willingly, and Sgt. Sorrels radioed for assistance. Sgts. Mock and McClain were located at an adjoining

---

[3] This statement recounts material facts that are supported as required by Fed. R. Civ. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded. Facts are stated in the light most favorable to Plaintiff to the extent his version of events is supported by the record. *See Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) ("[A]lthough this Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, 'a plaintiff's version of the facts must find support in the record.'") (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)).

property and soon arrived. Each of the undercover officers wore a police badge on a chain around his neck. Although Plaintiff denies the badges were visible to him or displayed at all times, the badges can be seen in photographs taken at the scene. There was conflicting testimony by other witnesses as to whether the police officers' badges were visible during their efforts to subdue Mr. McDaniel. According to Plaintiff's deposition testimony, however, the undercover officers were carrying equipment typical of law enforcement officers, such as firearms and radios, and he assumed "they were some sort of enforcement entity." *See* Martin Dep. 95:2-5.

The officers attempted for several minutes to restrain Mr. McDaniel and take him into custody. A video recording made by a bystander with a cell phone does not show the entire incident, but captures an almost two-minute segment.[4] It depicts three white men (the officers) holding the arms of a black man (Mr. McDaniel), pinning him to the ground, and attempting to handcuff him. A group of approximately 15 to 20 people, including Plaintiff and other security guards, gathered to watch the scuffle between Mr. McDaniel and the officers. Plaintiff approached the officers and attempted to question them about what was happening. None of them answered Plaintiff's questions, but instead, at least two of them directed Plaintiff repeatedly to "get back" or "back up," and at one point Plaintiff was told

---

[4] Because the parties agree that the video accurately depicts the recorded portion of events, the facts clearly shown by the video are accepted as true, and any inconsistent facts presented by a party are disregarded. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (rejecting facts contrary to videotape, stating: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (relying on video evidence "while acknowledging that it did not capture everything").

emphatically, "Back up or you're going to jail!" *See* Def. City's Mot. Summ. J., Ex. 2 [Doc. No. 58]; Def. Officers' Mot. Summ. J., Ex. 8 [Doc. No. 62]. Sgt. Sorrels has testified that he felt threatened by the size of the crowd and the intensity of the situation, and Sgts. Sorrels, Mock and McClain have all testified that their attention to Mr. McDaniel was interrupted by Plaintiff's conduct. Lt. Vetter, also in plain clothes, arrived sometime during the altercation but he did not participate. Plaintiff has testified that Lt. Vetter's police badge was visible, and he verbally identified himself to Plaintiff as a police officer. Lt. Vetter informed Plaintiff that he would be arrested when uniformed officers arrived.

Uniformed police officers were dispatched to the scene in response to radio calls for assistance. When they arrived to take custody of Mr. McDaniel, they also arrested Plaintiff. He was cited for the offense of "Interfering with Official Process, Obstruction," in violation of Section 30-58 of the Municipal Code. *See* Pl.'s Mot. Decl. J., Ex. 2 [Doc. No. 61-2]; Def. Officers Mot. Summ. J., Ex. 12 [Doc. No. 59-12]. This ordinance provides as follows:

    (a)    No person shall obstruct, attempt to obstruct or disobey a lawful command of any police officer in the discharge of his/her duties by threat or intimidation or force, including but not limited to area control devices used by the Police Department for the purpose of crime scene investigations, regulating, warning or guiding vehicles or pedestrians, unless otherwise directed by an authorized person.

    (b)    Any person convicted of violating any of the provisions of Subsection (a) shall be guilty of a Class "b" offense.

Okla. City, Okla. Code § 30-58 (2010).

During his arrest, Plaintiff was handcuffed with his hands behind his back by one or more of the uniformed officers. Plaintiff does not know exactly who handcuffed him because he could not see who was behind him, but he admits none of the individual defendants in this case was involved. The parties dispute whether the arresting officer or officers applied an unreasonable amount of force, but it is undisputed that Plaintiff received abrasions on his arms and a sprained wrist. Plaintiff was taken to jail and released on bond.

Plaintiff was later prosecuted on a charge of obstructing an officer in violation of Section 30-68. *See* Def. City's Mot. Summ. J., Ex. 8 [Doc. No. 56-9]. This ordinance provides, in pertinent part, as follows:

> Any person who interferes, obstructs, attempts to obstruct, or disobeys a lawful command of any police officer in the discharge of his/her duties, by any means other than by threat, intimidation, or force is guilty of a Class "a" offense.

Okla. City, Okla. Code § 30-68(a) (2010).

A trial was held on April 2, 2012. Sgts. Sorrels, Mock, and McClain and another officer testified for the prosecution and were cross-examined by Plaintiff's counsel. After the prosecutor rested, Plaintiff's counsel demurred to the complaint, and the demurrer was overruled. During the defense case, Plaintiff's counsel attempted to introduce the two-minute cell phone video that is part of the summary judgment record in this case. Because this evidence had not been timely disclosed before trial in the criminal case, the municipal judge declared a mistrial. Upon subsequent motion of the prosecutor stating that the "mistrial

was based on insufficient grounds and jeopardy [had] attached," the case was dismissed with prejudice. *See* Pl.'s Mot. Decl. J., Ex. 3 [Doc. No. 61-3].

### Discussion

To establish a § 1983 claim against an individual defendant asserting a defense of qualified immunity, Plaintiff must show facts that "make out a violation of a constitutional right" and that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The alleged constitutional violations in this case involve an individual's Fourth Amendment right not to be arrested without probable cause of a criminal offense, and an arrestee's Fourth Amendment right not to be subjected to a use of excessive force.[5]

To establish a § 1983 claim against the City, Plaintiff must establish that both a constitutional violation occurred and an official policy caused the violation. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). If an unconstitutional policy is established, "§ 1983 provides for the imposition of liability where there exists an 'affirmative' or 'direct causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010).

---

[5] Under Tenth Circuit case law, the Fourth Amendment provides the appropriate constitutional standard. *See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) ("Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment – all depending on where the defendant finds himself in the criminal justice system . . . . [T]he Fourth Amendment applies until formal charges are brought or an arraignment is held because force used is part of the 'seizure.'"); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (adopting objective reasonableness as "the appropriate standard for a pretrial detainee's excessive force claim" under the Due Process Clause).

By their Motion, the Officers assert that summary judgment is proper on Plaintiff's § 1983 claims for the following reasons: A) the unlawful arrest claim fails because: 1) it is barred by the doctrine of collateral estoppel due to a determination by the municipal court that a *prima facie* case of obstruction was established in Plaintiff's criminal trial; 2) it lacks merit because the undisputed facts establish probable cause for Plaintiff's arrest; 3) it is barred by the doctrine of qualified immunity; B) the retaliatory arrest claim fails for the reasons that there was probable cause for Plaintiff's arrest and the Officers are entitled to qualified immunity; C) the retaliatory prosecution claim fails for these reasons and based on the doctrine of absolute immunity for testifying witnesses because Plaintiff's claim is based solely on the testimony given during his criminal trial;[6] D) the conspiracy claim is barred by qualified immunity because any constitutional right of access to the courts that may arise from a public official's concealment of evidence was not clearly established in 2011; and E) the excessive force claim fails because Plaintiff cannot show any of the Officers personally participated in a constitutional violation, if any occurred.[7]

The City asserts that summary judgment should be granted in its favor because no basis for municipal liability can be established. The City contends the municipal ordinances are constitutional on their face and as applied to Plaintiff, and are not preempted.

---

[6] The Officers also note that Lt. Vetter did not testify and thus Plaintiff has failed to show his personal participation in the alleged retaliatory prosecution. Plaintiff responds, correctly, that Lt. Vetter is not a named defendant on the retaliatory prosecution claim. *See* Compl. [Doc. No. 1], p.7.

[7] Defendants also contend there was no constitutional violation because Plaintiff lacks evidence that his handcuffing resulted in more than *de minimis* injury.

## I.    Plaintiff's Claims Against the Officers

### A.    Claim of Unconstitutional Seizure

#### 1.    Collateral Estoppel or Issue Preclusion

The Fourth Amendment protects an individual against a warrantless arrest without probable cause to believe the person has committed a crime. *See Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc); *see also Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011). As one basis for summary judgment on Plaintiff's claim that his arrest violated the Fourth Amendment, the Officers assert that the claim is barred by an adverse determination of the issue of probable cause during Plaintiff's criminal case. They rely on case law holding that a judicial finding of probable cause in a criminal case bars a person from attempting to relitigate the issue of the legality of his seizure. *See*, *e.g.*, *Hubbert v. City of Moore*, 923 F.2d 769, 773 (10th Cir. 1991) (where "probable cause was fully and fairly litigated in the prior criminal proceeding [it] cannot be relitigated in [a] civil action"). In *Hubbert*, a probable cause determination in a preliminary hearing was found to be binding on federal courts and to warrant summary judgment on a § 1983 false arrest claim. However, "the preclusive effect of a prior state court judgment is defined by that state's law." *Id*. at 772. The Tenth Circuit has cautioned district courts to consider carefully whether collateral estoppel, or issue preclusion, should apply to an Oklahoma municipal court's ruling.

In *Bell v. Dillard Department Stores, Inc.*, 85 F.3d 1451 (10th Cir. 1996), the court of appeals concluded that the doctrine of issue preclusion should not apply to a municipal court ruling for two reasons: first, the minute entry on which the defendant relied was not

signed by the municipal court judge who ruled on the issue of probable cause, "and under Oklahoma law it therefore may not be afforded preclusive effect;" and second, the Tenth Circuit could not determine from the record that the plaintiff "had a full and fair opportunity to litigate the probable cause issue in municipal court." *Id*. at 1454. *See also Gouskos v. Griffith*, 122 F. App'x 965, 974 (10th Cir. 2005) (defendant "bore the burden of establishing the defense of issue preclusion on the issue of probable cause" and failed to satisfy this burden).

In this case, the Officers rely on a transcript of Plaintiff's municipal court trial in which the presiding judge overruled a demurrer at the close of the prosecution's case in chief. Plaintiff apparently had a full and fair opportunity to litigate any Fourth Amendment issue because the ruling was issued during a bench trial in which the Officers testified and were cross-examined by Plaintiff's trial counsel. However, the legal significance of the presiding judge's interlocutory ruling in a case that ended in a mistrial and a dismissal is unclear. The Officers present no legal authority to establish the preclusive effect of this ruling. Therefore, the Court finds that the Officers have failed to establish their defense of issue preclusion.

### 2. Fourth Amendment Violation

"Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cortez*, 478 F.3d at 1116 (internal quotation omitted); *see*

*Koch*, 660 F.3d at 1239 (same). "This is an objective standard, and thus the subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive. Whether a reasonable officer would believe that there was probable cause to arrest in a given situation is based on the totality of the circumstances." *Koch*, 660 F.3d at 1239 (internal quotation and citation omitted); *see Keylon v. City of Albuquerque*, 535 F.3d 1210, 1219 (10th Cir. 2008) ("an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause") (internal quotation omitted). "The validity of the arrest does not depend on whether the suspect actually committed a crime" or whether an ordinance is valid or later declared unconstitutional. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 37-38 (1979). "[A]n officer's reasonable mistake of fact [or law] can still justify a probable cause or reasonable suspicion determination." *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013), *abrogated in part by Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014); *see United States v. Cunningham*, 630 F. App'x 873, 876 (10th Cir. 2015).[8]

It is undisputed that the Officers were conducting an undercover investigation when they encountered an intoxicated, belligerent individual who was subject to arrest for disorderly conduct and public intoxication. Mr. McDaniel did not initially cooperate with the arrest, and it took several minutes for the Officers to restrain Mr. McDaniel and take him

---

[8] Although Lt. Vetter was not present during the entire series of events, his formation of probable cause to arrest Plaintiff did not require that he personally observe obstructive conduct. "'Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is . . . probable cause to arrest,' as long as such reliance is 'objectively reasonable.'" *Koch*, 660 F.3d at 1240 (quoting *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000)).

into custody. It is further undisputed that Plaintiff approached the Officers several times while they were engaged with Mr. McDaniel under circumstances where they felt threatened and Plaintiff's conduct distracted their attention from Mr. McDaniel. Plaintiff was repeatedly instructed to step back or back away, and he was expressly ordered to step back or be arrested. When Plaintiff did not comply with their instructions, he was arrested. Under the facts and circumstances shown by the record, Plaintiff's actions gave the Officers an objectively reasonable basis to believe he was committing the misdemeanor offense of obstructing a police officer in the performance of his duties, in violation of the City's ordinances, § 30-58 or § 30-68,[9] and, arguably, the Oklahoma obstruction statute, Okla. Stat. tit. 21, § 540.[10]

The Court finds these circumstances to be sufficiently similar to ones discussed in *United States v. Christian*, 190 F. App'x 720, 722-23 (10th Cir. 2006), to warrant a similar conclusion that the officers had sufficient grounds for an arrest. In *Christian*, two patrol officers were investigating a group of individuals in a bank parking lot when the defendant approached the officers multiple times, was repeatedly told to move away, and was warned that he would be arrested if he did not comply. The Tenth Circuit agreed with the district court's finding that the officers had probable cause to arrest the defendant under § 540 for

---

[9] Both ordinances prohibit a person from obstructing or "disobey[ing] a lawful command of any police officer in the discharge of his/her duties," but one ordinance applies to instances of "threat or intimidation or force" and the second applies to any other means of obstruction.

[10] "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Okla. Stat. tit. 21, § 540.

obstructing an officer. The court of appeals reasoned that "the question before us is not whether [the defendant] was *actually* obstructing or interfering . . . , but rather whether an objectively reasonable officer could conclude that [the defendant] was violating the Oklahoma statute." *Id*. at 723 (emphasis in original). In giving an affirmative answer to this question, the Tenth Circuit examined Oklahoma case law and concluded that the defendant's actions as a whole – distracting the officers and refusing several requests and an order to leave the area – could sufficiently delay or obstruct an officer in the performance of his duties to permit a reasonable belief that there was probable cause for an arrest. The Oklahoma cases cited by the court included *Trent v. State*, 777 P.2d 401, 402-03 (Okla. Crim. App. 1989), in which a passenger in a vehicle involved in a traffic stop refused to leave the scene and engaged in "loud and angry" verbal harassment of the officer, and *Marsh v. State*, 761 P.2d 915, 916 (Okla. Crim. App. 1988), in which a false statement to an officer impeded the officer's investigation of a child's death. *See also Koch*, 660 F.3d at 1240-41 (police officer assigned to investigate whereabouts of elderly woman had probable cause to believe caretaker's refusal to respond to his inquiry constituted obstruction under § 540); *United States v. Sanchez*, 555 F.3d 910, 919 (10th Cir. 2009) (defendant's flight from officers in violation of lawful order to get down impeded their execution of a search warrant and constituted obstruction under § 540).

Similarly, in this case, Plaintiff's insistence on questioning the Officers while they were actively involved in arresting Mr. McDaniel and remaining near the area of the arrest

after repeatedly being instructed to back up, impeded the Officers' performance of their official duties. The video plainly shows that while the Officers were attempting to effectuate the arrest of an intoxicated individual who was resisting their efforts to take him into custody, they had to turn several times from the task at hand to address Plaintiff's conduct and his efforts to question their authority and actions. Plaintiff's refusal to follow the Officers' instructions, including an express warning to step back or be arrested, distracted their attention from the arrestee and delayed them – if only briefly – in performing their lawful work. Therefore, the Officers had probable cause to believe that Plaintiff was violating the municipal ordinances or the Oklahoma obstruction statute.

Plaintiff does not dispute that he failed to step back as directed by the Officers; he questions only whether he was required to do so. Plaintiff also does not dispute that he continued to pepper the Officers with questions while they were actively engaged in restraining and arresting Mr. McDaniel, and that his efforts to verbally engage the Officers continued after he was repeatedly directed to step back and even warned of his possible arrest if he failed to step back. Although the reasons for Plaintiff's actions are disputed, including his alleged uncertainty about whether the Officers were policemen and whether he had a right to question them, the test for probable cause is an objective one viewed from the perspective of "a reasonable officer . . . in a given situation." *See Koch*, 660 F.3d at 1239. Further, "the issue is not whether [Plaintiff] could or would be convicted for violating the [municipal ordinance], but rather whether the officer reasonably believed he was committing the

offense." *See Christian*, 190 F. App'x at 723 n.3.  The Court finds that the facts known to Officers on the scene, and Plaintiff's actions of distracting their attention from the arrest of Mr. McDaniel after they ordered him to step back, established probable cause to believe Plaintiff was committing the misdemeanor offense of obstructing an officer.  Therefore, the Court concludes that Plaintiff's arrest was based on probable cause to believe he had committed a criminal offense.

For these reasons, the Court finds no unconstitutional conduct by the Officers involved in the seizure of Plaintiff.  Because Plaintiff has failed to show a violation of the Fourth Amendment, the Officers are entitled to summary judgment on the § 1983 claim based on an unlawful seizure.

### 3. Qualified Immunity

Alternatively, a finding that the Officers lacked probable cause to arrest Plaintiff would not end the qualified immunity analysis.  "As to whether the law was clearly established at the time of the alleged violation, we require a section 1983 plaintiff to show that 'it would have been clear to a reasonable officer that probable cause was lacking under the circumstances . . . .'" *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (quoting *Koch*, 660 F.3d at 1241).  "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.  Therefore, when a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed

to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120 (citation and footnote omitted); *see Koch*, 660 F.3d at 1241. If the Officers had "arguable probable cause" to arrest Plaintiff, they are entitled to qualified immunity. *Id*. at 1121; *see Kaufman*, 697 F.3d at 1300; *Koch*, 660 F.3d at 1241.

In this case, the undisputed facts show that a reasonable officer could have concluded that probable cause existed to arrest Plaintiff for obstructing or impeding the performance of a police officer's lawful duties. A reasonable officer could have reasonably, if mistakenly, believed that Plaintiff knew they were police officers engaged in a lawful arrest and could have reasonably, if mistakenly, believed that Plaintiff was willfully disobeying their instructions to step back from the scene of Mr. McDaniel's arrest. Based on Plaintiff's conduct and his apparent defiance of their authority, the Officers reasonably could concluded that Plaintiff was violating the ordinances or statute. Even Lt. Vetter, who may not have personally observed obstructive conduct, was entitled to rely on the information provided by the Officers engaged with Mr. McDaniel and reportedly distracted by Plaintiff's persistent efforts to question them. Therefore, the Officers had arguable probable cause to arrest Plaintiff for obstructing a police officer.

For these reasons, the Court finds that the Officers are entitled to qualified immunity from Plaintiff's § 1983 claim of wrongful arrest or imprisonment.

### B. Plaintiff's Claim of Retaliatory Arrest

The Officers contend they are entitled to qualified immunity from liability on Plaintiff's claim of retaliatory arrest because it was not clearly established in October 2011 that an individual had a constitutional right "to be free from a retaliatory arrest that is supported by probable cause." *See* Def. Officers' Mot. Summ. J. [Doc. No. 59], p.17 (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). In response, Plaintiff concedes "that if his arrest was made with probable cause, the Defendants are entitled to qualified immunity on his retaliatory arrest cause of action." *See* Pl.'s Resp. Officers' Mot. [Doc. No. 66], p.18. In light of the Court's finding of probable cause for Plaintiff's arrest, *supra*, the Officers are entitled to summary judgment on Plaintiff's retaliatory arrest claim.

### C. Plaintiff's Claim of Retaliatory Prosecution

Similarly, the Officers contend they are entitled to qualified immunity from liability on Plaintiff's claim of retaliatory prosecution based on case law holding that a plaintiff must allege and prove an absence of probable cause to establish a such a claim. *See* Def. Officers' Mot. Summ. J. [Doc. No. 59], p.18 (citing *Hartman v. Moore*, 547 U.S. 250, 263 (2006)). And Plaintiff similarly concedes "that if his arrest was made with probable cause, the Defendants are entitled to qualified immunity on his retaliatory prosecution cause of action." *See* Pl.'s Resp. Officers' Mot. [Doc. No. 66], p.18. In light of the Court's finding of probable cause for Plaintiff's arrest, *supra*, the Officers are entitled to summary judgment on Plaintiff's retaliatory prosecution claim.

In addition, the Officers claim absolute immunity from suit on Plaintiff's retaliatory prosecution claim because it is based on alleged false testimony in his criminal trial. *See* Def. Officers' Mot. Summ. J. [Doc. No. 59], pp.18-19 (citing *Briscoe v. LaHue*, 460 U.S. 325, 341-43 (1983), and *P.J. ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010)). Plaintiff agrees that the Officers enjoy absolute immunity for testifying as witnesses but argues that this immunity does not shield their non-testimonial acts. *See* Pl.'s Resp. Officers' Mot. [Doc. No. 66], pp.18-19. This argument is inconsistent with Plaintiff's pleading and lacks any factual support. Further, the only non-testimonial acts suggested in Plaintiff's argument is the alleged act of arresting him without probable cause. *Id*. p.19. Therefore, the Court's finding of probable cause precludes Plaintiff's retaliatory prosecution claim.

### D.    Plaintiff's Claim of Conspiracy

The Officers contend they are entitled to qualified immunity from liability on Plaintiff's conspiracy claim because it was not clearly established in October 2011 that an evidentiary cover-up by police officers involved in an individual's case may violate a constitutional right of access to the courts. *See* Def. Officers' Mot. Summ. J. [Doc. No. 59], pp.19-20 (quoting *Lynch v. Barrett*, 703 F.3d 1153, 1161-63 (10th Cir.), *cert. denied*, 133 S. Ct. 2352 (2013)). Plaintiff does not respond to this argument but instead asserts that his "conspiracy cause of action is not based solely on evidentiary cover-up." *See* Pl.'s Resp. Officers' Mot. [Doc. No. 66], p.19. Plaintiff argues that his conspiracy claim is based on concerted action among the Officers to match their stories and relate the same version of

events "in order to have probable cause to arrest [him]." *See id.*, p.20. In reply, the Officers contend Plaintiff's conclusory allegations of parallel action among them is insufficient to establish a conspiracy. *See* Officers' Reply Br. [Doc. No. 68], p.5 (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1999), and *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010)). The Court agrees. Plaintiff has failed to identify specific facts suggesting an agreement and concerted action among the Officers, as required to demonstrate a genuine dispute as to whether the Officers participated in a conspiracy to violate his constitutional rights. Therefore, the Officers are entitled to summary judgment on Plaintiff's § 1983 conspiracy claim.

### E. Plaintiff's Claim of Excessive Force

The Officers contend there are no facts to establish their personal participation in any constitutional violation that occurred during the uniformed police officers' use of force to effectuate Plaintiff's arrest. In response, Plaintiff concedes that his excessive force claim against the Officers rests on their failure to intervene in the uniformed officers' use of handcuffs to arrest him. *See* Pl.'s Resp. Officers' Mot. [Doc. No. 66], pp.20-21.

The Officers' argument is well taken. The Court finds that Plaintiff has failed to present sufficient facts that would present a triable issue of the Officers' liability for any unconstitutional use of force against Plaintiff in effecting his arrest. Plaintiff has failed to come forward with any properly supported facts to establish that the Officers had a duty to intervene in the uniformed police officers' use of force against Plaintiff. Therefore, Plaintiff

cannot establish a § 1983 claim against the Officers for any use of excessive force by others, and the Officers are entitled to summary judgment on this claim.

Alternatively, were the Court to address Plaintiff's excessive force claim, it would fail on the merits. The Fourth Amendment and its standard of objective reasonableness also govern Plaintiff's claim that the uniformed officers used excessive force in effectuating his arrest. *See Koch*, 660 F.3d at 1246; *Cortez*, 478 F.3d at 1125; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted); *see Cortez*, 478 F.3d at 1125. The court of appeals held in *Cortez* that claims of unlawful arrest and excessive force must be analyzed separately. To prevail on an excessive force claim, a plaintiff must prove "that the officers used greater force than would have been reasonably necessary to effect a lawful arrest," regardless whether the arrest was in fact lawful. *Cortez*, 478 F.3d at 1127; *see also Romero v. Story*, 672 F.3d 880, 890 (10th Cir. 2012). Further, "[i]n cases in which 'the handcuffing is permissible yet the *manner* of handcuffing may render the application of force excessive,' 'the *Graham* factors are less helpful in evaluating the *degree* of force applied.'" *Koch*, 660 F.3d at 1247 (quoting *Fisher v. City of Las Cruces*,

584 F.3d 888, 896 (10th Cir. 2009)).  In order to succeed on a manner-of-handcuffing claim, "a plaintiff must show 'some actual injury that is not de minimis, be it physical or emotional.'"  *Id.* (quoting *Cortez*, 478 F.3d at 1129).

The only excessive force identified in Plaintiff's brief is that he was handcuffed in a manner that injured his hands and wrist.  *See* Pl.'s Resp. Officers' Mot. [Doc. No. 66], p.21. Plaintiff has not presented any facts to show the degree of force used was greater than reasonably necessary to restrain him and transport him to jail.  Further, Plaintiff's claim based on unduly tight handcuffing is not supported by evidence of actual injury from the handcuffs that could be considered more than a *de minimis* injury; and thus his claim is insufficient as a matter of law under *Cortez* and *Koch*.  *See Cortez*, 478 F.3d at 1129 (finding regarding a claim of tight handcuffing that there was "too little evidence of actual injury" to support an excessive force claim); *see also Koch*, 660 F.3d at 1247-48 (same).  Plaintiff relies on evidence of only abrasions and a wrist sprain to establish an actual injury.  The Court finds that the degree of force used to effectuate Plaintiff's arrest was objectively reasonable under the circumstances shown by the record and that his injury from the handcuffs was insufficient to support an excessive force claim.

For these reasons, the Court finds that the Officers are entitled to summary judgment on Plaintiff's § 1983 claim for the use of excessive force.

## II.    Plaintiff's § 1983 Claims Against the City

### A.    Municipal Liability

The City may be held liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by [the City's] officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Plaintiff seeks to recover damages from the City for his allegedly unlawful arrest based on the Officers' enforcement of an unconstitutional municipal ordinance.[11]  It is well established, however, that "even if it could be said that [the City's] policies . . . were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional violation." *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001); *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing "the Heller rule" as well established); *see also Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009).  For this reason alone, the City is entitled to summary judgment on Plaintiff's § 1983 claim for damages.  In light of Plaintiff's separate declaratory judgment claim, however, the Court proceeds to address the constitutionality of the ordinance on which Plaintiff's prosecution was based.  After so doing, the Court finds the lack of any constitutional violation, by either the Officers or the City's municipal ordinance, warrants the entry of summary judgment on Plaintiff's § 1983 claims against the City.

---

[11]  Plaintiff alleges no basis to hold the City liable for any use of excessive force.

## B.  Plaintiff's Declaratory Judgment Claims

### 1.  Standing

Standing to sue is a jurisdictional issue to be addressed as a threshold matter.  *See Wilderness Soc'y v. Kane Cty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009).  Plaintiff has the burden to establish that he has standing to seek prospective declaratory or injunctive relief, and to do so, he must show a continuing injury.  *See Dias*, 567 F.3d at 1176.  "In the context of a facial challenge to the constitutionality of a penal statute, a plaintiff alleges a continuing injury if 'there exists a credible threat of [future] prosecution thereunder.'"  *Id*. (quoting *Ward v. Utah,* 321 F.3d 1263, 1267 (10th Cir. 2003)); *see Faustin v. City & Cty. of Denver*, 268 F.3d 942, 948 (10th Cir. 2001) ("To have standing, [plaintiff] must show a real and immediate threat that she will be prosecuted under [the challenged] statute in the future.").  In this case, Plaintiff has not identified or properly presented any facts from which to find a credible threat that he will be prosecuted in the future under the City ordinance on which his declaratory judgment claim is based, Section 30-86.  Thus, Plaintiff lacks standing to bring a claim for prospective relief.

Plaintiff does have standing, however, to seek retrospective relief from any injuries already caused by the City's enforcement of the ordinance.  *See Dias*, 567 F.3d at 1178.  Plaintiff "has standing to sue for damages based on [his prior] prosecution . . . and to seek declaratory relief with respect to [his] prosecution."  *See Faustin*, 268 F.3d at 948.  Thus, Plaintiff can properly seek a determination whether a past constitutional violation occurred.

## 2.    Facial Challenge to Constitutionality of Section 30-68

The Tenth Circuit has held that facial challenges to a penal statute "are appropriate in two circumstances: (1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment); or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application. In the latter case, plaintiffs face a heavy burden: They must 'demonstrate that the law is impermissibly vague in all of its applications.'" *Dias*, 567 F.3d at 1179-80 (citations omitted) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 497 (1982)). In this case, Plaintiff's challenge appears to fall under the first category. He contends Section 30-68(a) "is unconstitutionally broad and vague on its face because it criminalizes a substantial amount of constitutionally protected speech afforded by the First Amendment and confers unfettered and standardless discretion on the police officers and municipal judges . . . to determine whether spoken words are punishable as criminal interference." *See* Pl.'s Mot. Decl. J. [Doc. No. 61], pp.6,8. To support this assertion, Plaintiff relies on *City of Houston v. Hill*, 482 U.S. 451, 458 (1987).

The Supreme Court addressed a municipal ordinance in *Hill* that "makes it 'unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty,' and thereby prohibits verbal interruptions of police officers." *Id*. at 461. The Court concluded that this portion of the ordinance "deals not with core criminal conduct, but with speech" and that "the First Amendment protects a significant amount of

verbal criticism and challenge directed at police officers." *Id*. at 460, 461. The Court found that the ordinance was "not limited to fighting words nor even to obscene or opprobrious language" but prohibited protected speech. *Id*. at 462. The Court concluded that the ordinance was "substantially overbroad" and facially invalid because it "criminalize[d] a substantial amount of constitutionally protected speech, and accord[ed] the police unconstitutional discretion in enforcement." *Id*. at 466-67.

The Court distinguished the ordinance in *Hill* from a disorderly conduct statute that withstood a facial challenge in *Colten v. Kentucky*, 407 U.S. 104 (1972). The Court noted that the statute in *Colten* made it a crime if a person "with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof . . . [c]ongregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." *Colten*, 407 U.S. at 108 (quoting Ky. Rev. Stat. § 437.016(1)(f) (Supp. 1968)). "The Court upheld the statute [in *Colten*] against an overbreadth challenge because the Kentucky Supreme Court had construed it so that it 'infringe[d] no protected speech or conduct.'" *Hill*, 482 U.S. at 465 n.14 (quoting *Colten*, 407 U.S. at 111).

In this case, Section 30-86 proscribes conduct by a person that "interferes, obstructs, attempts to obstruct, or disobeys a lawful command of any police officer in the discharge of his/her duties, by any means other than by threat, intimidation, or force." *See* Okla. City, Okla. Code § 30-68(a) (2010). Read in the context of the ordinance, the prohibition against "interfering" with an officer "by any means" does not criminalize a substantial amount of

protected speech, as argued by Plaintiff.  *See* Pl.'s Mot. Decl. J. [Doc. No. 61], pp.8-9.

Unlike the ordinance in *Hill* prohibiting verbal interruptions, Section 30-68 does not cast a

broad net over any speech directed toward a policeman, but requires conduct that negatively

impacts law enforcement activities.  The challenged ordinance reaches speech, if at all, only

when it interferes with or obstructs – that is, impedes or actually hinders – a police officer's

execution of official tasks.

The City's ordinance is similar to ones that other federal courts have found to be

distinguishable from the "interruption" ordinance in *Hill*.  *See McDermott v. Royal*, 613 F.3d

1192, 1193-94 (8th Cir. 2010) (discussing cases); *see also Lawrence v. 48th Judicial Dist.

Ct.*, 560 F.3d 475, 482 (6th Cir. 2009) (ordinance that prohibited resisting, interfering, and

hindering police officers suggested "some kind of physical interference" and was not

overbroad).  In fact, an overbreadth challenge to a municipal ordinance that, like Section 30-

68, made it "unlawful for any person to obstruct, prevent, or interfere with, or to attempt to

obstruct, prevent, or interfere with any peace officer in the lawful discharge of his duty" was

expressly rejected in *Fair v. City of Galveston*, 915 F. Supp. 873, 879 (S.D. Tex.), *aff'd*, 100

F.3d 953 (5th Cir. 1996).  Here too, the Court finds that Section 30-68 is not constitutionally

overbroad or facially invalid.

In the Court's view, the conduct proscribed by Section 30-86 is not significantly

different from conduct prohibited by Oklahoma's obstruction statute.  As stated above, the

ordinance addresses a person who "interferes, obstructs, attempts to obstruct, or disobeys a

lawful command of any police officer in the discharge of his/her duties." *See* Okla. City, Okla. Code § 30-68(a) (2010). The Oklahoma statute addresses a person who "willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office." *See* Okla. Stat. tit. 21, § 540. As interpreted by decisions of Oklahoma's highest criminal court, the obstruction statute reaches only conduct and speech that impedes an officer's performance of his duties. *See Trent*, 777 P.2d at 402-03 (defendant's verbal assault of a highway patrol trooper "in a loud and angry manner, repeatedly frustrated [the officer's] efforts to remove [an arrestee's] vehicle from the road" and "hindered the process of removing the vehicle from the road"); *Marsh*, 761 P.2d at 916 (false statement to an officer impeded the officer's investigation). The statute has not been applied in a way that criminalizes a substantial amount of speech protected by the First Amendment. Like the obstruction statute, the focus of the City's ordinance is conduct or speech that impedes or obstructs a police officer or disobeys a lawful command in the performance of his duties.

Plaintiff also asserts, in a cursory manner, that "Section 30-68(a) is constitutionally vague [because a] reasonable person is incapable of knowing what conduct or words constitute the undefined, ambiguous, and vague offense to 'interfere' with a police officer 'by any means.'" *See* Pl.'s Mot. Decl. J. [Doc. No. 61], p.9. He argues that "[b]ecause the ordinance does not define 'interfere,' citizens cannot reasonably understand or determine what type of conduct is prohibited." *Id.* He relies on the general principle stated in *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), that an ordinance must "define the criminal offense

with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *See* Pl.'s Resp. Def. City's Mot. [Doc. No. 65], p.4.

According to the Supreme Court, "the [void-for-vagueness] doctrine focuses on both actual notice to citizens and arbitrary enforcement," but "the more important aspect of vagueness doctrine 'is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). Upon a common-sense reading of Section 30-68, the Court finds, as did the Supreme Court considering the disorderly conduct statute in *Colten*, "that citizens who desire to obey the statute will have no difficulty in understanding it." *See Colten*, 407 U.S. at 110 (internal quotation omitted). The Court further finds that police officers and judges will have no difficulty in enforcing it. Contrary to Plaintiff's argument, the use of the word "interfere" in Section 30-68 does not set an undefined standard and confer "unfettered discretion" to apply the ordinance to "any conduct that an Oklahoma City Police Officer determines to be in any way interference." *See* Pl.'s Resp. City's Mot. Summ. J. [Doc. No. 65], p.5. To the contrary, the Supreme Court in *Cameron v. Johnson*, 390 U.S. 611, 616 (1968), held that the words "obstruct" and "interfere" in an anti-picketing statute were not unconstitutionally vague, and instead "conclude[d] that the statute clearly and precisely delineates its reach in words of common understanding."

For these reasons, the Court finds that Plaintiff's facial challenge to the Section 30-68 fails as a matter of law.

### 3.      As-Applied Challenge to Constitutionality of Section 30-68

When considering an as-applied challenge, a court considers the challenged statute "in light of the charged conduct." *See United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009); *see also Galbreath v. City of Okla. City*, 568 F. App'x 534, 539 (10th Cir. 2014) (for an as-applied challenge, courts "must tether our analysis to the factual context in which the ordinance was applied").

In this case, Plaintiff contends he was charged with violating Section 30-68 "for speech that merely questioned the identities and action of the Defendant Officers." *See* Pl.'s Mot. Decl. J. [Doc. No. 61], p.11. Plaintiff asserts "that when [he] was ordered to 'back up' or words to that effect, he did back up" and his only conduct "that could form the basis for his arrest was his speech." *Id*. Plaintiff also argues that Section 30-68 permits "police officers to arbitrarily decide for themselves, on the scene, whether speech constitutes 'interfering' and if that interference is sufficient to justify arrest and prosecution." *Id*.

Plaintiff's argument is at odds, however, with the undisputed facts shown by the summary judgment record. Contrary to Plaintiff's position, it is undisputed that Plaintiff's conduct and speech diverted the Officers' attention from their efforts to arrest and restrain Mr. McDaniel – as shown by the video recording – and that Plaintiff disregarded repeated requests and a direct order to back up or be arrested. Plaintiff could not legitimately claim

31

surprise when the Officers made good on their promise to arrest him for failing to comply with their instructions, or claim that the ordinance was arbitrarily applied to his conduct. Therefore, the Court finds on the undisputed facts shown by the record that Plaintiff's as-applied challenge to the ordinance fails as matter of law.

### 4.    Preemption of City Ordinances, Sections 30-58 and 30-68

The City also seeks summary judgment on Plaintiff's claim for a declaration that the City's obstruction ordinances are preempted by the Oklahoma obstruction statute. The City relies on an established state-law principle that "[a]n ordinance may cover an authorized field of local laws not occupied by general laws and may prohibit acts not prohibited by statute." *Moore v. City of Tulsa*, 561 P.2d 961, 963 (Okla. 1977). Further, some matters "are of concern to both the city and state and not the exclusive concern of either. When this is the case, the two [municipal and state] provisions governing the matter are cumulative and each is operative." *Hampton ex rel. Hampton v. Hammons*, 743 P.2d 1053, 1060 (Okla. 1987). Plaintiff asserts, however, that the City's obstruction ordinances and the state statute conflict and that the local laws must be declared void by preemption.

While acknowledging that neither party provides controlling authority, the Court is persuaded that the City's ordinances are not inconsistent with the state statute and both the local and state laws may be given effect. The Oklahoma Supreme Court has recognized that a municipality with the power of local self-government, such as the City, "has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of

its inhabitants even though general statutes exist relating to the same subjects." *Moore*, 561 P.2d at 963 (footnote omitted). A city in "exercise of its police powers may enact an ordinance not in conflict with statutes on the same subject." *Id.* "In order for there to be a conflict between a state enactment and a municipal regulation, both must contain either express or implied conditions which are inconsistent and irreconcilable with one another. If either is silent where the other speaks there can be no conflict" *Id.* (footnote omitted).

Plaintiff does not identify any irreconcilable conflict between the City's obstruction ordinances and the state obstruction statute, but rather, he argues that the ordinances have a broader reach than the statute. Accepting this circumstance as true, Plaintiff has effectively conceded that no irreconcilable conflict actually exists. The municipal ordinances, which address matters of legitimate concern for local law enforcement, are separately enforceable and are not preempted.

For these reasons, the Court finds that the City is entitled to summary judgment on Plaintiff's declaratory judgment claims.

## Conclusion

For the reasons set forth herein, Defendants are entitled to summary judgment on all claims asserted in the Complaint.

IT IS THEREFORE ORDERED that Defendant Oklahoma City's Motion for Summary Judgment [Doc. No. 56] is GRANTED; the Motion for Summary Judgment of Defendants Vetter, Sorrels, Mock and McClain [Doc. No. 59] is GRANTED; and Plaintiff's

Motion for Declaratory Judgment [Doc. No. 61] is DENIED.  Judgment shall be entered accordingly.

IT IS SO ORDERED this  14th  day of April, 2016.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE